UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROBIN MARIE HAYS,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     vs. | )   Case No.  2:15-cv-00100-JEO |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Robin Marie Hays[1] brings this action pursuant to 28 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits ("DIB").  The case has been assigned to the court per the general order of reference of this district.  After thorough review, the court finds the Commissioner's decision is due to be affirmed.

**I.     PROCEDURAL HISTORY**

On June 30, 2011, Hays filed an application for DIB with the Social Security Administration.  (R. 148).[2]  The Regional Commissioner denied her claim on August

---

[1] Plaintiff is also identified in the record as Robin Haynes and Robin Hays Haynes.

[2] References herein to "R. ___" are to the electronic record located at document 7.

22, 2011. (R. 153-158). Hays filed a Request for Hearing with an Administrative Law Judge ("ALJ") on October 18, 2011. (R. 159-160). On February 12, 2013, Administrative Law Judge Ronald Reeves conducted a hearing which Hays, her attorney, and a vocational expert ("VE") attended. (R. 101-147). The ALJ issued a decision denying Hays's DIB claim on May 17, 2013. (R. 69-93).

On July 2, 2013, Hays requested the Appeals Council review the ALJ's decision. (R. 68). The Appeals Council denied Hays's request for review on November 28, 2014. (R. 1-4). On that date, the ALJ's decision became the final decision of the Commissioner. Hays then filed this action for judicial review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly tailored. The court must determine whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance." *Id.* It means the decision is supported by "relevant evidence a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Applying the foregoing standard, the court must defer to the ALJ's factual findings. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Winchel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). In contrast, the court reviews questions of law de novo. *See Cornelius*, 936 F.2d at 1145. Accordingly, no presumption of validity attaches to the ALJ's conclusions of law. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). If the court finds the ALJ improperly applied the law, or failed to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the court must reverse the ALJ's decision. *See Cornelius*, 936 F.2d at 1145-46.

### III.   STATUTORY FRAMEWORK

To qualify for disability benefits, a claimant must show she is disabled. Being disabled is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The plaintiff bears the burden of proving that she is disabled and is responsible for producing evidence in support of such a claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence whether the claimant: "(1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience." *Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[3] (citing 20 C.F.R. § 404.1520(a)(4)). "An affirmative answer to any of the above questions leads either

---

[3]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, the may be cited as persuasive authority. 11th Cir. R. 36-2.

to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.' " *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*; *Evans*, 551 F. App'x at 524.

## IV.   FINDINGS OF THE ALJ

Hays was 55 years old at the time of the hearing before the ALJ. (R. 117). She has a high school education and attended junior college for approximately one year. (*Id*. 117-118). Hays was employed as an administrative assistant from 1980 to September 14, 2005, the date she last engaged in substantial gainful activity ("SGA"). (*Id*. 118, 217). Hays initially alleged an onset date of disability beginning September 14, 2005, but later amended that date to December 14, 2009. (*Id*. 72). The ALJ determined her date of last insured to be December 31, 2010. (*Id*. 84).

Following a hearing, the ALJ determined Hays had two medically determinable "severe" impairments: fibromyalgia syndrome and mild cervical and lumbar degenerative disease. (*Id*. 85). Hays also suffers from a number of additional

ailments, including chronic fatigue syndrome, insomnia, Dupuytren's contractures, breast implants, hypertension, hypercholesterolemia, and irritable bowel syndrome. (*Id*.) The ALJ found these additional impairments, however, did not impose a significant limitation on Hays's ability to perform basic work activities when considered in combination, and therefore were "not severe." (*Id*.) In addition, the ALJ found Hays suffered from one medically determinable mental impairment, depression, but that it "did not cause more than minimal limitation" in her ability to perform basic mental work and activities and was "not severe." (*Id*.)

Moving to the next step, the ALJ found neither of Hays's severe impairments met or medically equaled the severity of the impairments included in the Listings. (*Id*. 86). The ALJ found that Hays had the residual functional capacity ("RFC") to perform a full range of light work during the period from her amended onset date of disability through her date of last insured. (*Id*. 87). During this period, Hays's impairments could reasonably be expected to produce "no worse" than a moderate degree of pain. (*Id*. 88). The ALJ also found Hays capable of performing her past relevant work as administrative assistant at the sedentary level of exertion. (*Id*. 89). Relying on the VE's testimony, the ALJ determined that the administrative assistant job could be performed at the sedentary level, as Hays had performed the job in her former employment. (*Id*.) The ALJ concluded, therefore, that Hays was not disabled

within the meaning of the Social Security Act from the alleged date of onset to the date of last insured. (*Id.*)

## V. DISCUSSION

Hays contends the ALJ did not apply the "treating physician's rule" to evidence supplied by David A. McLain, M.D, and Kennedy F. Kunz, M.D. (Doc. 10 at 9-13). She also argues that the ALJ failed to properly articulate his reasons for rejecting the treating physicians' reports and opinions. Hays urges the court to reverse the Commissioner's decision and award her disability benefits. (*Id*. at 14-15). In the alternative, she requests the Commissioner's decision be reversed and remanded for proper application of the treating physician's rule and proper consideration of the evidence. The Commissioner retorts that the ALJ applied the correct legal standard in assessing the medical opinions and that substantial evidence supports the ALJ's decision. (Doc. 11 at 4-9).

> **A. The ALJ's Decision to Give Little Weight to Dr. McLain's Statement that Hays was "Disabled from Any Employment" and Dr. Kunz's Statement that Hays Could Not Sustain Work Without Excessive Absenteeism**

Hays initially contends that the ALJ improperly evaluated the opinions of treating physicians McLain and Kunz. (Doc. 10 at 9). In assessing this contention, the standard is clear:

> A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).
>
> The court must also be aware that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions,...but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

*Cagle v. Comm'r. Soc. Sec.*, 2015 WL 5719180, *3 (N.D. Ala. Sept. 30,

2015).

Here, the ALJ's opinion includes an extensive review of Hays's medical records and other evidence. With regard to Dr. McLain, a rheumatologist, the ALJ's opinion recounts Dr. McLain's initial assessment of Hays and her medical history from her first visit with him on December 14, 2009:

> "She has had back pain and has seen Dr. Michael Murray. She was sent to Dr. Faulkner and she had an MRI of the lumbar spine and had several epidural blocks. She also has trouble with her hands with knots in the palms of both hands. She also has problems at C6-7 and has seen Dr. Fullmer. She had a cervical myelogram and this flared up her fibromyalgia. She had severe pain in her right hip in 1995-1996. She had her appendix and this didn't help and actually worsened the pain. She was sent to Dr. Traylor and he diagnosed Fibromyalgia. She was referred to Dr. Gilliland for fibroymalgia. She has tried physical therapy several times. She also tried aquatic exercise and this made her worse. She has some swollen glands and possibly the left sternoclavicular joint. She has a history of silicone breast implants. These were removed and were found to be leaking. She now has saline implants in. She is applying for disability now. She worked for 25 years for Buffalo Rock as an administrative assistant for the VP of marketing. She has [*sic.*, had] trouble getting to work. The mornings were very difficult. Her body would go into an attack. She had trouble sitting, standing, lifting, or bending. She had a move at work and this flared her up.
>
> "She complains of severe fatigue. She has trouble getting out of a bathtub, opening jars, and getting dressed. She has dry eyes. She is thirsty and brings a drink in with her. She has dry skin. She has a sharp pain that wakes her up at night in her tailbone. She has had some left knee pain. She has pain in her right ankle. She has had pain in her shoulders. She has trouble sleeping at night. She is worse with changes in weather, chilling, unaccustomed exercise, and stress. She is better with heat.

> "She has problems with her right leg giving out on her." (Exhibit 9F, page 26)

(R. 77, 426). The ALJ further notes the following concerning Dr. McLain's assessment of Hays on December 14, 2009:

> The claimant's neck was tender to palpation. Dr. McLain wrote that in her spine, ribs, and pelvis, the claimant had 15 of the 18 tender points characteristic of fibromyalgia syndrome. The claimant's gait and station were normal. Each of her upper extremities was tender at the elbow. Her right lower extremity was tender to palpation at the hip and knee. Her left lower extremity was tender to palpation at the hip. The claimant's cranial nerves II-XII were grossly intact. Her reflexes were 2+ and symmetric, with no pathological reflexes. Her sensation was intact to touch, pin, vibration, and position. The claimant's mood was depressed, but her judgment was intact. She was oriented to time, place, and person. Her memory was intact for recent and remote events. Dr. McLain assessed the claimant as having fibromyalgia; Dupuytren's contracture bilaterally, left greater than right; status post silicone breast implants, now with saline breast implants; hypertension; hypercholesterolemia; irritable bowel syndrome; and depression. He added the words: "Totally Disabled from Any Employment" (Exhibit 9F, pages 27-28).

(*Id*. 78, 427).

As a part of the review process, the ALJ must consider any statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairments, and the claimant's physical and/or mental restrictions. *See* 20 C.F.R. § 404.1527(a)(2) & (c). In weighing the evidence,

the ALJ must consider, among other things, the source's treatment or examining relationship with the claimant, the evidence supporting the opinion, and the opinion's consistency with the record as a whole. *See* 20 C.F.R. § 404.1527(c) (1)-(4). A treating source opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. *See* 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p (S.S.A.), 1996 WL 374188 at *3. A claimant's "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528(a); *see also* 20 C.F.R. § 404.1529.

A treating physician is a physician or other acceptable medical source with an ongoing treatment relationship with a claimant. 20 C.F.R. § 404.1502. A claimant has an ongoing treatment relationship with the physician when she sees or has seen the physician with a frequency consistent with the accepted medical practice for the type of treatment required for her condition. *Id.* As noted above, the Eleventh Circuit requires the ALJ to give a treating physician's opinion "substantial, considerable, or even controlling weight" unless there is good reason to the contrary. *Lewis*, 125 F.3d at 1440. The rule affords treating physicians' opinions significant weight because they are "likely to be the medical professionals most able to provide a detailed, longitudinal picture" of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). The

opinion of a treating physician may bring a "unique perspective" to the medical evidence that cannot be obtained from objective medical findings alone, such as consultations or hospitalizations. *Id.* Provided good reason to the contrary, however, the ALJ may disregard the report or opinion of a treating physician. *Lewis*, 125 F.3d at 1140.

Here, the ALJ determined that Dr. McLain's assessment of Hays's condition was not entitled to substantial weight because Dr. McLain saw Hays only once during the relevant period. It is important to place this determination in context. The ALJ stated:

> The claimant has been treated over the years for fibromyalgia, chronic fatigue, headaches, hypertension, and depression as well as neck and back pain due to cervical and lumbar degenerative disc disease, but she has not really followed through with recommended treatment for her pain except for some medications, particularly Fioricet, which her new internist in November 2010 wanted to wean her from. The claimant's previous internist reported in April 2008 that the claimant had vague body aches and anxiety issues that were not improving, and that the claimant was still taking Fioricet and Ambien with no real improvement. Dr. Krauss, a pain management specialist, reported in November 2005 that he would not write chronic opiate therapy for the claimant until she saw a pain psychologist but there is no evidence that the claimant did that or that she ever went back to Dr. Krauss. The claimant did not follow through with recommended physical therapy in 2005. She saw Dr. McLain first in December 2009 (Exhibit 9F, pages 26-28), then not again until April 2011, after her date last insured. The claimant has consistently reported to Dr. McLain that her pain was as bad as it could be on the pain scale and she has told her other doctors the same, that her medications basically do not help. She reported to Dr. Kunz, her

> internist, on December 3, 2010, that her medications were working, but requested more, and Dr. Kunz refused. The claimant went back to Dr. McLain in April 2011. Despite various medications, including Lortab and Klonopin, the claimant still reports "pain as bad as it could be." Dr. McLain says on forms that the claimant has rheumatoid arthritis, but this is never checked on his treatment records, although fibromyalgia and a positive antinuclear antibody test are checked. The claimant's other records do not show a diagnosis of rheumatoid arthritis.

(R. 87-88). This analysis is consistent with the ALJ's placement of significant weight on Hays's other treatment records during the insured period. (*See id*.). The ALJ considered, but discounted, Dr. McLain's records from the period after the expiration of Hays's insured status "as they express opinions for dates after [her] date last insured." (*Id*.)

The court cannot say on this record that the ALJ did not properly consider Dr. McLain's opinion. This is particularly true in view of Dr. McLain's conclusory statement in December 2009 after seeing Hays only once and determining that she was "Totally Disabled from Any Employment." (R. 428). When he reached this conclusion, he did not have the "longitudinal picture" typically associated with a treating physician. In fact, he did not see Hays again until April 2011. (R. 425). Accordingly, his December 2009 opinion is not entitled to the typical deference afforded a treating physician. *See Gainous v. Astrue*, 402 F. App'x 472, 474 n.2 (11th Cir. 2010) ("we note that this Court has refused to give greater weight to the opinion

13

of a physician who only examined the plaintiff once); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) ('[Plaintiff] relies on the rule that opinions of treating physicians are generally entitled to more weight than opinions of nontreating physicians. We are unable to accept the application of that rule in this case because [physician] saw [plaintiff] only one time.' (internal citations omitted)); *see also Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) ('The evidence submitted by appellant's treating physician ... received all the consideration it was due. [Physician] saw appellant twice and submitted only sketchy, conclusory notes.')"). Additionally, Dr. McLain's conclusory statement is premised principally on Hays's representations. The regulations are clear that a plaintiff's own "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528(a). Still further, Dr. McLain's determinations – whether Hays was disabled and whether she could perform any work – are committed to the discretion of the ALJ. *See* SSR 96-2p (S.S.A.), 1996 WL 374188 at *5.; *see also Lewis,* 125 F.3d at 1440 ("we note that we are concerned here with the doctors' evaluations of Lewis's condition and the medical consequences thereof, not their opinions of the legal consequences of his condition").

As to Dr. Kunz, Hays states that Dr. Kunz "also indicates that [she] does not possess the residual functional capacity to sustain work activity without excessive

absenteeism." (Doc. 10 at 9). While it is true that Dr. Kunz does make that statement, he did not do so until October 5, 2012, when he completed a Physical Capacities Evaluation form for Hays. (R. 431). As noted by the ALJ:

> More than ten and a half months passed before ... [Dr.] Kunz ... examined the claimant on November 4, 2010, and found her to be alert, oriented times four, and in no acute distress. X-rays of the claimant's cervical spine showed a secondary ossification center at L5 anteriorly, and loss of lordotic curvature. X-rays of the claimant's lumbar spine showed good alignment with good lordotic curvature, no acute bone abnormalities and no degenerative changes. Chest x-rays were normal. Neurologic examination was norm al. The claimant had normal range of motion throughout, with no joint tenderness. Dr. Kunz detected no trigger points in the claimant's cervical, thoracic, lumbar, or sacral spine. The claimant was able to heel walk and toe walk. She had difficulty squatting and rising but was able to do so. The claimant complained of low back pain and neck pain, but she had no arm weakness. She also complained of fibromyalgia, arthritis, a migraine headache, and insomnia (Exhibit 6F, pages 12-13 and 16).

(R. 79, 373-74, 377). Hays's other 2010 visits were relatively unremarkable. Her fibromyalgia was noted on her December 3, 2010 visit with Dr. Kunz as being better. (R. 369). She was continued on her medications. (R. 370). During 2011, while her fibromyalgia was mentioned along with her arthritis and other medical conditions, there was no mention of her having an inability to work. (R. 441-21, 444-45, 449-50). On March 23, 2012, Dr. Kunz noted that Hays reported no pain, which was contrary to her March 14, 2012 report. (Compare R. 441 & 444). The court also notes that on April 27, 2012, Dr. Kunz also completed a "Clinical Assessment of

Pain" on Hays, noting that her medication will impact her so as to make her "unable to function at a productive level of work." (R. 404).

Given the present record, the court finds that the ALJ fairly and appropriately considered the evidence from Dr. Kunz. Even though he is a treating physician, his records do not evidence that Hays was disabled during the insured period. While he concluded in 2012 that Hays would not be able to work, that is not dispositive of the issue before the court. To the contrary, as discussed below, there is no evidence in the record that Hays's condition in 2012 is reflective of her status during the relevant period. Additionally, as noted above, this is a determination for the ALJ.

### B. Post-Insured Treating Physician Evidence from Drs. McLain and Kunz

Hays also asserts that the evidence of her subseqent treatment from Drs. McLain and Kunz – which "is not intermittent or sporadic" – demonstrates that while she can only perform "some functions associated with work [she] cannot perform other functions." (Doc. 10 at 12). She further argues that because this evidence is not contradicted, the ALJ's determination that she can return to her past work is not supported by any opinion evidence, and that the treating specialists' evidence, "as synthesized through the testimony of a vocational expert" at the evidentiary hearing, establishes that she is disabled under the Act. (*Id*. at 13). The Commissioner retorts

that even if the opinions of Drs. McLain and Kunz had addressed Hays's condition on or before her last-insured date, the evidence during that period does not support their opinions. (Doc. 11 at 7-8).

The Eleventh Circuit has "recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant" to the pertinent period. *Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1322-23 (11th Cir. 2015) (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (considering a "treating physician's opinion" even though "he did not treat the claimant until after the relevant determination date"), *superseded on other grounds by statute*, 42 U.S.C. § 423(d)(5)).

The ALJ correctly placed little weight on the post-insured-date medical evidence. Hays is correct, however, that Dr. McLain was a treating physician after her date of last insured. Dr. McLain certainly was a treating physician from the period of April 2011 forward, as Hays began seeing Dr. McLain frequently during that period. *See* 20 C.F.R. 404.1502.

The effect of any physician's opinion after the date of last insured, however, is significantly diluted if it is inconsistent with pre-expiration evidence. *See Hughes v. Comm'r of Soc. Sec.*, 486 F. App'x 11, 13 (11th Cir. 2012) ("In order to qualify for DIB, an individual must prove that her disability existed prior to the end of her

insured status period, and, after insured status is lost, a claim will be denied despite her disability.") (citing *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)[4]). Here, neither Dr. McLain nor Dr. Kunz provided any post-insured period evidence that would bolster a finding of disability during the insured period. Instead, their opinions demonstrate that Plaintiff's impairments simply worsened after the insured period. (R. 403-25, 431-51). A review of the record confirms that Plaintiff's reports of pain changed dramatically from 2005 to the post-insured period, particularly April 2011 to March 2012. Specifically, in 2005, Hays's complaints regarding her level of pain were generally in the 5-7 range, with one "8" (February 25, 2005). (R. 296, 298, 307, 309, 317, 318). In 2011-2012, they ranged from "9" to "10." (*Id*. 405-06, 408, 416, 419, 423).[5] Accordingly, the court finds the ALJ's decision was consistent with the substantial evidence in the record.

### C. Need to Articulate the Reasons for Rejecting the Treating Physicians' Report and Opinion

Hays next argues that the ALJ committed reversible error when he "failed to articulate clearly" the reasons for giving less weight to the opinion of the treating

---

[4] Decisions of the Fifth Circuit handed down by September 30, 1981, are binding as precedent on all federal courts within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.3d 1206 (11th Cir. 1981).

[5] The court notes an absence of records concerning her specific pain levels during the intervening period – particularly 2009 and 2010.

18

physician.[6] (Doc. 10 at 14). Specifically, she argues that the ALJ's explanation is legally insufficient. The ALJ stated in his decision as follows:

> As for the opinion evidence, the Administrative Law Judge accords significant weight to the medical evidence contained in Exhibits 3F, 4F, 8F, and 9F (for the period prior to the expiration of the claimant's insured status). Little weight is given to the assessments in Exhibits 9F and 10F insofar as they express opinions for dates after the claimant's date last insured. Little weight is given to Exhibit 7F, as it is not based on all the medical evidence of record for the period prior to the expiration of the claimant's insured status.

(R. 88). The Commissioner does not specifically address this argument other than to state that there is substantial evidence to support the decision.

The Eleventh Circuit Court of Appeals has been clear: "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). In this instance, while the ALJ's discussion and explanation is brief and to the point, it does not warrant a reversal. He did what he was required to do under controlling precedent. This claim is without merit.

## VI. Conclusion

For the foregoing reasons, the court finds the Commissioner's decision is due

---

[6]Hays presents this argument as though she is asserting that the ALJ failed to properly articulate his reasoning as to a single doctor, presumably Dr. McLain. However, out of an abundance of caution, the court is reviewing this claim as if it pertains to both Dr. McLain and Dr. Kunz.

to be affirmed.

    **DONE**, this the 31st day of March, 2016.

                                                                _____
                                                                **JOHN E. OTT**
                                                                Chief United States Magistrate Judge